E-FILED
Tuesday, 18 August, 2020  10:13:30 AM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case Nos.  95-10001 |
| | ) | 11-30039 |
| | ) | |
| | ) | |
| NATHANIEL S. DEVINE, | ) | |
| | ) | |
| Defendant. | ) | |

OPINION

RICHARD MILLS, United States District Judge:

Pending is the Motion of Defendant Nathaniel Devine for Compassionate Release.

The Defendant moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) and the Coronavirus Aid, Relief and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, 134 Stat. 281 (March 27, 2020), based on what he alleges are extraordinary and compelling reasons.  These reasons include the proliferation of COVID-19 at FCI Cumberland combined with the exponential growth of the disease at BOP facilities across the country, in addition to the

Defendant's myriad of preexisting health conditions that place him at a particularly high risk for severe illness and/or death in the event he contracts the virus.

The Government opposes the motion and claims that Defendant has not met his burden of showing that a reduction is warranted under § 3582(c)(1)(A)(i).

## I.    BACKGROUND

On March 23, 2012, following a guilty plea to one count each of Possession with Intent to Distribute a Controlled Substance, in violation of 21 U.S.C. § 841(b)(1)(C); Possessing a Firearm in Furtherance of a Drug Trafficking Crime,  in violation of 18 U.S.C. § 924(c); and Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g), Defendant Nathaniel Devine was sentenced in Case No. 11-30039 to serve 97 months' imprisonment, followed by six years of supervised release.

At the time of the offenses of conviction, the Defendant was on supervised release in Case No. 95-CR-10001, for which the Court sentenced him to 60 months imprisonment, consecutive to the sentence imposed above.  The Defendant has remained in custody since July 15, 2011.  His current projected release date is on November 21, 2022.

The Defendant has a lengthy criminal history which has resulted in him spending 31 of the last 37 years in prison.

Nathaniel Devine is a 56-year old black man serving his sentence at FCI Cumberland.  The Defendant's motion notes that he suffers from a number of chronic health conditions that have been identified by the CDC as placing him at high risk should he contract COVID-19, including the following heart conditions: Atrial Fibrillation (A-Fib), cardiac disease, heart murmur and angina pectoris.  He also suffers from hypertension, asthma and Chronic Obstructive Pulmonary Disease (COPD), for which he takes daily medications.  The Defendant claims that these chronic medical conditions place him at high risk for contracting and having serious complications, including death, from COVID-19.  Based on the combination of his health conditions along with circumstances created by the current pandemic, the Defendant asks the Court to consider exercising its discretion and releasing him to an early period of home confinement.

As of August 12, 2020, 111 Bureau of Prisons (BOP) inmates and one staff member have died from COVID-19.  www.bop.gov/coronvirus.  More than half of the inmates who have died have been under the age of 65.  The overwhelming majority of those now-deceased inmates had "pre-existing medical conditions which the CDC lists as risk factors for developing more severe COVID-19 disease."

Since President Trump signed the First Step Act into law on December 21, 2018, defendants may now bring their motions for compassionate release after exhausting administrative remedies within the Bureau of Prisons ("BOP").  *See* 18

U.S.C. § 3582(c)(1)(A). The law provides the sentencing judge with jurisdiction to consider a defense motion for reduction of sentence based on "extraordinary" or "compelling" reasons whenever "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]." *See* 18 U.S.C. § 3582(c)(1)(A).

Because the Defendant made a request to his Warden more than 30 days before the motion for compassionate release was filed, the Court concludes he has met the statutory exhaustion requirement.

The Court must also find that a sentence reduction is "consistent with applicable policy statements issued by the [United States] Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The First Step Act does not say what "extraordinary and compelling reasons" warrant a sentence reduction, but the compassionate release statute directs the Court to consider the sentencing factors of 18 U.S.C. § 3553(a) when deciding compassionate release motions. *See* 18 U.S.C. § 3582(c)(1)(A).

The Defendant notes that, because there have been and continue to be confirmed cases at FCI Cumberland, he stands at particularly high risk of contracting

the virus.  This added risk of death is a factor that can be considered in determining whether to grant compassionate release.

On April 3, 2020, the Attorney General made the finding that emergency conditions are materially affecting the functioning of the BOP, thereby allowing the BOP Director to review all inmates for home confinement.  The Attorney General's Memorandum explained that "inmates with a suitable confinement plan will generally be appropriate candidates for home confinement rather than continued detention at institutions in which COVID-19 is materially affecting their operations."   There have been calls from legal experts for the Attorney General to expand the home confinement program even further.  Moreover, multiple United States Senators have recently voiced concern over BOP's attempts to curb the spread of the virus and their non-responsiveness to the call to release medically vulnerable inmates.

The Government notes that in recent months, the BOP has taken extraordinary steps to protect the health of inmates in its charge.  Under the current phase of BOP's Action Plan, inmates are required to be secured in their assigned cells/quarters, in order to stop the spread of the disease.  Only limited group gathering is allowed, with attention to social distancing to the extent possible, to facilitate commissary, laundry, showers, telephone and computer access.  Moreover, BOP has severely limited the movement of inmates and detainees among its facilities.  All staff and inmates have

been issued facemasks and are strongly encouraged to wear an appropriate face covering when in public areas where social distancing is difficult.  Every newly admitted inmate is screened for COVID-19 exposure risk factors and symptoms. Social and legal visits have been suspended since March 13, 2020.

## II. DISCUSSION

### (A)

Since passage of the First Step Act, the Sentencing Guideline policy statement has not been updated to reflect that defendants (and not only the BOP) may move for compassionate release but courts have turned to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction.  *See United States v. Weatherspoon*, 2020 WL 3803035, at *3 (S.D. Ind. July 7, 2020) (citations omitted).  The applicable guideline instructs that the Court should consider the sentencing factors set forth in 18 U.S.C. § 3553(a) when deciding a motion for compassionate release and the Court should not grant a sentence reduction if the defendant poses a risk of danger to the community, as defined in the Bail Reform Act.  *See* U.S.S.G. § 1B1.13.  The policy statement provides examples of "extraordinary and compelling reasons" in the application notes.  These examples generally fall into four categories based on a defendant's (1) terminal illness, (2) debilitating physical or mental health condition, (3) advanced

6

age and deteriorating health in combination with the amount of time served, or (4) compelling family circumstances.  U.S.S.G. § 1B1.13 comment. n.1 (A)-(C).  The Government contends that Defendant cannot meet these "extraordinary and compelling reasons" which would warrant release.

The commentary also includes a fifth catch-all provision for "extraordinary and compelling reasons other than, or in combination with, the reasons described in subdivisions (A) through (C)," as determined by the Bureau of Prisons.  The policy statement was last updated in November 2018 before the First Step Act was passed.

Certainly, the COVID-19 pandemic is in and of itself an extraordinary and unprecedented event in our lifetimes.  However, "the mere existence of COVID-19 in society and possibility that it may spread to a particular prison alone cannot independently justify compassionate release."  *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).  "Perhaps a prisoner could satisfy the extraordinary and compelling reasons requirement by showing that his particular institution is facing a serious outbreak of COVID-19 infections, the institution is unable to successfully contain the outbreak, and his health condition places him at significant risk of complications should he contract the virus."  *United States v. Melgarejo*, 2020 WL 2395982, at *3 (C.D. Ill. May 12, 2020); *see also United States v. Johnson*, 2020 WL 2573239, at *4 (C.D. Ill. May 21, 2020).

The Defendant claims that, based on his preexisting health conditions which include severe asthma and high blood pressure, he is among those most at risk of serious illness or death if he is exposed to the coronavirus while in custody. The Court may consider whether the global pandemic, along with other factors present in this case which include compelling family circumstances, present an extraordinary and compelling basis for a sentence reduction, regardless of whether it explicitly falls within one of the existing categories in § 1B1.13 commentary.

The CDC recognizes that prison conditions create the ideal environment for the transmission of contagious diseases. Moreover, it is difficult to prevent the introduction of COVID-19 into prison facilities. Individuals within a prison setting are unable to take proactive steps to protect themselves from the spread of the coronavirus.

As of August 13, 2020, the BOP's Coronavirus webpage reports that 1,208 inmates and 560 BOP staff have confirmed active cases of COVID-19. www.bop.gov/coronavirus. Another 9,810 inmates and 807 staff have recovered. *Id.*

The Defendant's Commentary notes that the CDC and other medical authorities have stated that those with certain chronic health conditions—including serious heart conditions and cardiovascular diseases, heart failure and COPD—are

especially vulnerable to and at higher risk for serious complications from COVID-19, including death. www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html.  Individuals with asthma and hypertension may be at greater risk, though that risk increases when combined with other at-risk factors.

The Defendant states that his medical records and PSR reflect a long history, going back to at least 2011, of serious heart conditions.  The PSR provides that, in 2011, he was hospitalized with a partial arterial blockage for which medications were prescribed.  He suffered a "myocardial infarction" in 2011 which is another term for "heart attack."  Moreover, the Defendant's BOP medical records include diagnoses of A-Fib, "cardiac disease," heart murmur and angina pectoris.  In 2017, he was hospitalized due to complications from A-Fib in which he suffered heart failure and had to be resuscitated.  The Defendant notes that he suffered these severe complications simply from his heart conditions alone, with no other aggravating factors.  The situation could be much worse if he were to contract the coronavirus.  The Defendant also suffers from asthma and COPD, for which he has struggled with bouts of chronic acute bronchitis (January 2018 and April 2018).  The Defendant notes there is a significant risk that if he contracts the virus, he will not survive.

As of August 13, 2020, there have been 148 completed tests at FCI Cumberland with 5 positive COVID-19 test results.  There are a total of 1,104

inmates at FCI Cumberland, including the 161 inmates at the Camp.  The Defendant posits that the reason for the relatively low number of positive cases is due to a lack of testing.  He claims the facility policy is to deny coronavirus tests, unless and until an inmate already has a fever.  Such a policy allows a facility to conceal its true numbers of positive cases, while at the same time needlessly exposing its inmates to serious harm.  The Defendant also describes inmates leaving the facility with UNICOR and returning daily to dormitory housing to sleep alongside him, without safety precautions.

The Government claims that, but for the COVID-19 pandemic, the Defendant would present no basis for compassionate release.  It claims that his medical ailments are well-controlled and do not impair his ability to provide self-care in the institution. The Defendant has regular doctor visits.  Moreover, the Government states that some of his conditions appear in the "resolved" section of his medical records.  However, the Defendant notes that does not mean he is no longer at risk—if his myocardial infarction was resolved, that merely that merely means he is not currently having a heart attack.  The CDC identifies those with previous incidents of heart failure as having a serious heart condition that places a person of any age at higher risk of severe complications if they contract COVID-19.  www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#serious-heart-conditions.  Moreover, the Defendant has had more recent heart problems.  He

suffered heart failure in 2017 while housed at the BOP facility in Manchester, Kentucky, at which time he had to be resuscitated at a London, Kentucky hospital. The BOP Health Services records say that Defendant was admitted to the hospital in April 2017 for chest pain, during which he "crashed and had CPR [and] had to be shocked."

Angina pectoris "is the medical term for chest pain or discomfort due to coronary heart disease." www.heart.org/en/health-topics/heart-attack/angina-chest-pain/angina-pectoris-stable-angina.   While the condition might be labeled as resolved, medical records show that the Defendant has suffered from it a total of seven times between April 2012 and March 2019.  It appears, therefore, to be a recurring issue and indicative of coronary heart disease.  The Defendant's medical records also indicate "atherosclerosis coronary or native coronary artery" dating to at least 2014, which is a buildup of plaque that precipitates coronary artery disease. www.heart.org/en/health-topics/cholesterol/about-cholesterol/atherosclerosis.   The CDC lists coronary artery disease as definite high risk factor for COVID.

The Defendant also states that based on his BMI of 34, he is considered to be obese.  Additionally, the Defendant suffers from hypertension that is not well-controlled, Atrial Fibrillation for which a cardioversion procedure was required in 2017, has had 5 bouts of acute bronchitis and the flu once this year, COPD, a history of asthma, a Diastolic murmur and he is prediabetic.  On June 10, 2020, the

Defendant was informed by BOP that because he has "3+ risk factors that put [him] at high risk if [he] should contract the COVID 19 virus," he was not cleared to return to work.

Accordingly, the record demonstrates that Defendant has some serious medical issues which place him at high risk—particularly his heart problems. These conditions along with his coronary artery disease, obesity, hypertension and history of COPD/asthma/acute bronchitis, place him at a high risk of serious complications and potential death if he were he to contract the coronavirus.

The Court finds that the number of risk factors as to this Defendant constitute extraordinary and compelling reasons under these circumstances. Certainly, these would not be extraordinary and compelling reasons in the absence of the COVID-19 pandemic. However, the pandemic exists. The Court recognizes that FCI Cumberland has not had as serious of an outbreak as some other BOP facilities across the country. Because the Defendant's level of risk obviously is significantly greater than that of most other inmates, it might well be the case that waiting for a major outbreak before allowing compassionate release would mean that compassionate release is too late for the Defendant.

(B)

The Defendant further states that based on the § 3553(a) factors, including the COVID-19 Pandemic, a sentence of time served along with a period of home confinement, coupled with his lengthy term of supervision, constitutes a sentence sufficient, but not greater than necessary, to achieve the purposes of sentencing.

The Defendant states that the sentencing purpose of providing just punishment does not warrant his exposure to a life-threatening illness.  The Defendant claims that the § 3553(a) factors in this case could be met by a reduction of his sentence to time served followed by a term of home confinement as a condition of supervised release.  The Defendant has served approximately 109 months, which is almost 70% of the sentence imposed.  He has a 6-year term of supervised release to follow.

Under *Pepper v. United States*, 562 U.S. 476, 490-493 (2011), the Court should consider post-offense developments under § 3553(a).  He has participated in educational and vocational programs while in BOP custody.  He has been employed as an orderly and has received good reviews.  The Defendant has had a number of disciplinary infractions including possessing stolen property as recently as 2018, though his BOP case manager at FCI Cumberland states he has not been a management problem while in custody.

The Government claims that Defendant is a danger to the community.  The Defendant is currently serving a sentence for two different crimes.  He was sentenced in 2012 for three convictions, two of which were ordered to run consecutive to each other, and the second represents a violation of his supervised release on another crime of drug distribution.  The Government alleges that Defendant's history and disrespect for authority show he poses the same threat to public safety that he did when first incarcerated.

The Defendant's criminal history certainly provides a basis for believing that he may remain a danger to the community.  His criminal history dates back to the age of 17 and includes state law convictions for armed robbery and unlawful possession of a controlled substance (cocaine) with intent to deliver, in addition to the 1995 and 2011 federal convictions.  The Defendant has spent most of his adult life in prison.  The criminal activity in this case occurred nine years ago when the Defendant was 47.  Given that the likelihood of recidivism diminishes with age, the Court is certainly hopeful that the Defendant would not reoffend at age 56.  His health condition might also make it less likely that he will continue engaging in crime.  The Court will also modify the Defendant's supervised release conditions to include a term of home confinement, which will ensure that he is closely monitored to address any issues.  Based on the Defendant's age, health and the modified conditions, the Court does not find that Defendant poses a danger to the community.

14

## III.   CONCLUSION

Based on the foregoing, the Court finds that Defendant has established that there exist extraordinary and compelling reasons that warrant a reduction in the term of imprisonment, and the Court finds that compassionate release is appropriate in this case.

Ergo, the Defendant's Motion for Compassionate Release in Case No. 95-10001 [d/e 43] is GRANTED.

The Defendant's Supplemental Motion for Compassionate Release in Case No. 11-30039 [d/e 37] is GRANTED.

The Clerk will terminate the Defendant's pro se motion [d/e 33] in Case Mo. 11-30039.

In Case No. 95-10001, the Court hereby reduces Defendant's term of imprisonment from 60 months to time served plus 72 hours in order to allow BOP to test Defendant for COVID-19 and for Defendant to arrange transportation.

In Case No. 11-30039, the Court hereby reduces Defendant's term of imprisonment from 97 months to time served plus 72 hours in order to allow BOP to test Defendant for COVID-19 and for Defendant to arrange transportation.

In Case No. 11-30039, the Court modifies Defendant's conditions of supervised release to require Defendant to spend one year in home confinement, with the first 14 days to be spent in isolation.  The home confinement shall start as soon as possible after his term of supervised release begins.  Defendant shall be monitored by telephonic monitoring as approved by the United States Probation Office until such time as the U.S. Probation Office is able to implement electronic monitoring.  All other aspects of Defendant's sentence shall remain the same.

The Bureau of Prisons is ORDERED to immediately test Defendant for COVID-19.  The Bureau of Prisons shall advise the U.S. Probation Office of the results of the test and, further, the Bureau of Prisons is also ORDERED to release Defendant once he has tested negative for COVID-19.  The Clerk is DIRECTED to send a copy of this Order to FCI Cumberland.  Defendant must self-quarantine for a period of 14 days beginning at the time of his release.

ENTER: August 17, 2020

FOR THE COURT:

/s/ *Richard Mills*
Richard Mills
United States District Judge